UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21886-CIV-JORDAN/DUBÉ

AURORA GUTIERREZ o/b/o
FERNANDO ALLANDE,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff

(D.E. #12) and the Motion for Summary Judgment filed by the Defendant (D.E. #19) pursuant to an

Order of Reference entered by the Honorable Adalberto Jordan, United States District Judge. The

issue before this Court is whether the record contains substantial evidence to support the denial of

benefits to the Plaintiff, Fernando Allande (hereinafter "Allande" or "Plaintiff").

## I. FACTS

The Plaintiff's mother, Aurora Gutierrez (hereinafter "Gutierrez" or "Plaintiff's Mother"),

filed an application for Child's Supplemental Security Income benefits on the Plaintiff's behalf on July

30, 2002. (R. 69-71,).[1] This application, was denied initially and on reconsideration. (R. 34-37, 42-

44).[2] Following a hearing (R.468-489), the ALJ issued a decision denying the request for benefits.

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

[2] The Plaintiff filed a second application on December 5, 2002, which was treated by the Administration as a request for reconsideration. (R. 76-79).

(R. 19-30). A request for review with the Appeals Council was denied. (R. 4-6).

The Plaintiff testified at the hearing held on December 12, 2005 that he is in ESC classes, which are for learning disability individuals but was not enrolled at the time of the hearing as he needed to transfer to a new school. (R. 473). The Plaintiff stated that 3-4 months before the hearing he was arrested for aggravated battery at school. (R. 474). Allande was placed in a detention center for 21 days as a result and stated that he has had no problems since. (R.474-475).

The Plaintiff stated that he is 17 years old and currently in the ninth grade. He added that he repeated sixth and eighth grades twice. According to the Plaintiff, his grades are Cs and sometimes Ds and Fs. (R. 475). Allande testified that he gets low grades because he does not pay attention and that the problem has existed since he was in elementary school. The Plaintiff stated that he sometimes has problems with his teachers; and used to leave school twice a week in the middle of the day. According to Allande, he was held back in school because he was suspended too many times. (R. 476). The Plaintiff stated that he was suspended because he used to get into fights at his old school. (R. 477).

Allande testified that he would typically complete 3 full days in a 5 day school week. The Plaintiff stated that he has been in three different schools in the previous four years because he and his mother move a lot. The Plaintiff said that he sometimes feels depressed because he feels unloved. (R. 478). The Plaintiff has three younger brothers, ages 7, 5 and 2. Allande testified that he had been in juvenile detention for 1 1/2 months for hitting his mother. (R. 479-480).

The Plaintiff stated that he enjoys playing basketball and that he practices on Saturdays with his brother. (R. 480). He added that he has not played for any of his previous schools due to his grades, but has played for recreational parks and with his friends for fun. (R. 480-481). Additionally,

2

the Plaintiff stated that he plays street football. (R. 481).

Allande testified that he currently is not taking any medications. (R. 481). The Plaintiff stated that he used to take medications, which would help calm him down. (R. 481-482). The Plaintiff added that when he takes his medication it allows him to attend school and learn. Additionally, Allande said that he does not need the medication when he is playing basketball. The Plaintiff testified that he has several chores which include: cleaning the house, washing the dishes and throwing out the garbage. (R. 482).

Allande stated that he cares for his younger brother by preparing his bottle, and changing his diaper and cloth when his mother is unable to. The Plaintiff said that he started playing basketball because of his older brother; and he has no problems with his home life. (R. 483).

In addition to the Plaintiff's testimony, the Plaintiff's Mother also testified at the hearing. Gutierrez testified that she receives many phone calls from her son's school due to problems with violent or aggressive behavior. (R.486). Additionally, she testified that they have had to move between 3-4 times over the course of the previous 5 years because live in Section Eight housing and have been required to move by the housing authorities. The Plaintiff's mother testified that he has been to both a psychiatrist and psychologist. (R. 486-487).

According to Gutierrez, the Plaintiff has had suicidal ideations and will sometimes "kind of drifts away." The Plaintiff's mother stated that her son helps her with the kids. Additionally, she testified that her son has problems with his memory. (R. 488). She added that he is always happy and very smart. (R. 489).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. A review of the medical records and the specific issues raised by the Plaintiff in his Motion for

3

Summary Judgment shows that the resolution of the issues does not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

At the conclusion of the hearing and after reviewing the records, the ALJ determined that the Plaintiff did not meet or equal a listing. As required by the regulations, the ALJ analyzed the six-domains and found that the Plaintiff did not have any "extreme limitations in any one area." The ALJ did find that the Plaintiff had "marked" limitation in the domain of interacting and relating to others, but as no other "marked" limitations were found, the Plaintiff was found not disabled within the meaning of the Social Security Regulations. (R. 30).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th

4

Cir. 1987).  The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. <u>See</u>, <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005).

The restrictive standard of review set out above applies only to findings of fact.  No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).  The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); <u>See also</u>, <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

A person under the age of 18 shall be considered disabled "if that  individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c (a)(3)(C)(i).

A three-part test is utilized in determining a child's disability.  The first step is to determine whether the child is performing substantial gainful activity. 20 C.F.R. §416.924(b).  If not, the next inquiry is whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. §416.924(c).  If so, the final step is to determine whether the child's impairments meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. §416.924(d).

In order to "functionally equal" the listings, an impairment "must result in 'marked'

5

limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. §416.926a(d). The six "domains" which are considered in making the determination are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself and (6) health and physical well-being. 20 C.F.R. §416.926a (b)(1)(i)-(vi). See also, Shinn v. Commissioner of Social Security, 391 F.3d 1276 (11th Cir. 2004).

A "marked limitation" is defined in the regulations as present if the impairments seriously interfere with the "ability to independently initiate, sustain, or complete activities." This limitation is the equivalent of the functioning that would be expected "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." §416.926a(e)(2)(i). Additionally, if the child is younger than 3 years old, a marked limitation will be found if the child is "functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record." §416.926a(e)(2)(ii). A marked limitation will also be found if a child has a valid score on a comprehensive standardized test designed to measure ability or functioning in a particular domain, that is two standard deviations or more below the mean, but less than three standard deviations and day to day functioning of the child in the domain-related activities is consistent with the score. §416.926a(e)(2)(iii).

The regulations also make special provision for finding that a marked limitation exists in the sixth domain of functioning, "Health and physical well-being" as follows:

> ... if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain,

6

"frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

§416.926a(e)(2)(iv).

An "extreme" limitation is present when the impairment(s) "interferes very seriously with your ability to independently initiate, sustain, or complete activities." §416.926a(e)(3)(i). The regulations add that an extreme limitation does not necessarily mean a total lack or loss of ability to function, but it is the "equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id. For children under age 3, an extreme limitation will generally be found if the child is functioning at a level of one-half of the chronological age or less if there are no scores from standardized tests in the record. §416.926a(e)(3)(ii). An extreme limitation will also be seen if a child has a valid score that is three standard deviations or more below the mean on a comprehensive standardized test which was designed to measure ability or functioning in a domain, and the day-to-day functioning in such activities is consistent with the score. §416.926a(e)(3)(iii).

As with "marked" limitations, there is also criteria in determining the presence of an "extreme limitation" in the "Health and physical well-being" category. Under this provision, an extreme limitation will be seen if the child is frequently ill because of the impairment(s) or has frequent exacerbations of the impairment(s) that result in "significant, documented symptoms or signs substantially in excess of the requirements for showing a 'marked' limitation." The regulation also

notes that if the child had episodes of illness or exacerbations of the impairment(s) which would be rated as "extreme," the "impairment(s) should meet or medically equal the requirements of a listing in most cases." §416.926a(e)(3)(iv).

As discussed above, if an ALJ determines that a child's impairment(s) does not meet or equal a listing, then the ALJ must proceed in the analysis and find whether the child meets a "functional listing." In order to "functionally equal" the listings, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. In the instant case, the ALJ determined that the Plaintiff had a marked limitation in the domain of interacting and relating to others but found no other limitations in the other five domains and was thus not disabled.

The Plaintiff's sole point of contention is that the ALJ erred in not finding a marked limitation in the domain of "acquiring and using information." With regard to this specific domain the ALJ stated as follows:

> In this domain, the child has less than "marked" limitations. The school records contained in the file establish the child has been retained on several occasions due to poor academic performance associated with his mental impairments. Psychological testing has also demonstrated evidence of learning disorders in word knowledge, written expression and verbal reasoning and the child's mother testified the child is below grade level in several subjects. (Exhibits 7E and 2F). The child also testified he is enrolled in classes for learning disabled students and he has difficulties paying attention in school. However, the child has demonstrated independence at home and cares for his infant brother without difficulty. The child has also tested with an average IQ and he can express simple and complex ideas in his daily living situation. The child also demonstrates age appropriate speech and language as well as average reading skills, indicative of some active learning process. Therefore, the court agrees with the findings of the state agency physicians that the child has less than marked limitations in this domain of functioning. (Exhibit 6F).

(R. 27). The Plaintiff contends that the ALJ's determination is not supported by substantial evidence

as the basis of the finding was the opinion of a non-examining state agency physician who improperly categorized the Plaintiff's IQ as "average;" and by rejecting the findings of the consultative psychologists and the Plaintiff's psychologists both of which would have served to establish that the Plaintiff's ability to acquire and use information was two standard deviations below the mean, which would demonstrate that the Plaintiff had a marked limitation in this domain.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984).

There are three specific reports which must be reviewed. First, the report of Dr. Mark William, a board certified clinical neuropsychologist, which the ALJ used in making his decision. Dr. William's report makes reference to a February 21, 2003 evaluation performed at the Plaintiff's school. Based on the review of the school report and an evaluation of teacher questionnaires, Dr. William determined that the Plaintiff does have learning disorders in the areas of reading and math,

9

but an overall intelligence within the average range. (R. 337).

On February 21, 2003, the Plaintiff underwent an initial evaluation by the Miami-Dade County Public Schools' Department of Psychological Services. (R. 195-203). At that time, it was reported that the Plaintiff was undergoing combined psychotherapy and psychotropic treatment. Additionally, he was undergoing counseling twice a week and taking Adderall, Risperdal and Singular. (R. 196).

The Plaintiff had a history of low academic functioning and behavior difficulties in school. He failed to complete assignments and was disruptive in class. The Plaintiff's reading teacher described the Plaintiff as hyperactive and having a short attention span. The Plaintiff's language and arts teacher reported that the Plaintiff was not interested in school and missed six days in two weeks. At that time the Plaintiff had Cs in two classes and Fs in everything else. (R. 197).

During the evaluation several tests were administered, which included: WISC-III, WIAT-II, Stanford-Binet Intelligence Scale: Fourth Edition; VMI; BASC; and the Devereaux Behavior Rating Scale. (R. 197). On the WISC-III, which is an intellectual examination, the Plaintiff obtained a verbal IQ of 73 that falls within the borderline range; a Performance IQ of 93 that falls into the average range; and a Full Scale IQ of 81 that falls within the low-average range. The examiner reported that these results demonstrate that the Plaintiff's global intellectual functioning can be expected to be somewhat slower than the average student in learning new things, and he may need extra academic help, particularly with abstract or complex academic subjects. (R. 198).

The examiner reported that the Plaintiff's global verbal cognitive abilities meant that he can expect to experience difficulty in putting his ideas into words; his judgment and reasoning powers can be expected to be of poor quality; and that he would be expected to be concretistic and limited in abstractive skills. The Plaintiff's non-verbal skills were found to be "as the average student of his age

10

group." (R. 198).

The Plaintiff demonstrated a variable range of functioning on his Verbal Scale test with scores ranging from average to intellectually deficient. He was at the lower end of the average range in terms of mental arithmetic. The report continued as follows:

> His ability to apply math knowledge to practical problems therefore lags somewhat behind that of his average peers. Fernando also score at the lower limits of the average range in a measure of social comprehension, demonstrating an adequate ability to apply common sense and judgment in social situations. Fernando experienced some difficulty in the recall of auditory stimuli, performing within the low-average range when compared to youngsters of his age range. His immediate memory span appears adequate, but of shorter span than normally expected. Fernando then scored at the lower limits of the Low Average range in a task that measured his fund of general information, indicating that he has failed to profit adequately from his formal learning experiences. Fernando's two lowest performances were in the areas of verbal abstract reasoning and vocabulary development. Fernando's ability to reason with verbal abstractions was very poor, falling in the Borderline range, and his word knowledge was extremely limited, falling in the intellectually deficient range. Fernando's vocabulary and verbal concept formation emerged as areas of cognitive weakness, as compared to Fernando's own profile of abilities, and also when these were compared to those of peers his age.

(R. 199). It concluded that the Plaintiff had a low-average rate and speed of learning. His verbal comprehension skills were found to be of low quality, while his perpetual organization skills were found to be of average quality. Overall, the Plaintiff intellectual functioning was found to be in the Low-Average range. (R. 199).

On October 23, 2002, the Plaintiff underwent a Psychological evaluation (Mental Status and Learning Disability evaluation) at The Oshodi Foundation. (R. 293-297). During the evaluation the Plaintiff took a WISC-III where he obtained a verbal IQ of 73, a performance IQ of 80 and a full

scale IQ of 75, which classified his level of intellectual functioning as borderline. (R. 295). On the

Woodcock-Johnson Test of Achievement which measures academic skills, he obtained scale scores

of 86 on the letter-word identification subtest with a grade equivalent of a 5th grader; 88 on the

passage comprehension subtest with a grade equivalent to a 5th grader; 84 on the calculation portion

with the grade equivalent of a 5th grader; 93 on the applied problems portion which is the grade

equivalent to a 6th grader; 61 on the dictation subtest with a grade equivalent to a 2nd grader; and

81 on the written samples subtest with a grade equivalent to a 3rd grader. The report also stated that

the Plaintiff finds himself unable to adequately show his potential in concrete terms due to his

impulsive approach to tasks. (R. 296).    The Plaintiff was diagnosed with Attention-Deficit

Hyperactivity Disorder, Impulsive Type; Disorder of Written Expression and Cannabis Abuse. (R.

297).

    Additionally, the evaluation was summarized as follows:

> Fernando Allande presented as a boy with some degree of intellectual
> and academic potential, but his long standing impulsivity remains a
> major source of his school-related problems. His ability to adequately
> focus and concentrate on long-term tasks is poor. He is unable to
> work on tasks that call for competitive skills or goal-directed behavior
> because of his observed signs of distractibility. His ability to persist
> on tasks or show adequate frustration tolerance skills is poor. His
> social interaction skills are marked with stubbornness. He does
> appear to be able to carry out age-appropriate, domestic activities of
> daily living such as personal hygiene. His ability to adequately
> perform academic work is limited.

(R. 297).

    After a full review of the record, this Court finds that limitations placed on the Plaintiff by

mental and educational testing reveal that substantial evidence does not support the ALJ's finding that

the Plaintiff had an average IQ. However, the Court agrees with the Defendant that there is not

12

sufficient evidence to support the Plaintiff's contention that he has marked limitations in the area of acquiring and using information. Accordingly, a remand is required.

While error is present, this Court cannot find that an award of benefits to the Plaintiff is required at this time, rather, this cause should be REVERSED and REMANDED for further proceedings including the use of a medical expert at a new trial in order to assist in a full and fair evaluation of the Plaintiff's medical history.

## III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that this cause should be REVERSED and REMANDED for a proper evaluation of the mental impairment issue. Accordingly, it is the recommendation of this Court that the Motion for Summary Judgment filed by the Plaintiff (D.E. #12) be **GRANTED** and the Motion for Summary Judgment filed by the Defendant (D.E. #19) be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Adalberto Jordan, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this ___25th___ day of August, 2008.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE

13